UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tasha G.,[1] | ) | C/A No. 9:25-cv-03220-JD-MHC |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff Tasha G. (Plaintiff) filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act (Act). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the ALJ's decision be affirmed.

## I. BACKGROUND[2]

Plaintiff applied for DIB in May 2021, alleging disability beginning April 20, 2020. R.pp. 62, 254–58. Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff then requested a hearing before an ALJ. R.pp. 62, 128–29, 175. On October 11, 2023, Plaintiff, represented by counsel, and a vocational expert testified at a hearing held before the ALJ. R.pp. 83–127. The ALJ thereafter denied Plaintiff's claims in a decision issued on January 31, 2024,

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 5.

finding that Plaintiff was not disabled from the alleged date of onset through the date last insured. R.pp. 62–77. The Appeals Council denied Plaintiff's request for review on February 10, 2025. R.pp. 1–7. This appeal followed.

Because this Court writes primarily for the parties who are familiar with the facts, the Court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II. APPLICABLE LAW

### A. Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g). Under this section, judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the [ALJ].” *Id*. (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the “statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action.” *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

**B. Social Security Disability Evaluation Process**

To be considered “disabled” within the meaning of the Social Security Act, a claimant must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. § 404.1520; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry her burden, she is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id*.

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since her alleged disability onset date. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet the regulations’ severity and duration requirements. *Id.* § 404.1520(c). At step three, the ALJ considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1

of 20 C.F.R. part 404, subpart P (the "Listings") or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC). *Id.* § 404.1520(d), (e); *Lewis*, 858 F.3d at 861. The RFC is "the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (quotation marks and citations omitted).

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(e), (f). If the ALJ finds the claimant capable of performing her past relevant work, she is not disabled. *Id.* § 404.1520(f). If the requirements to perform the claimant's past relevant work exceed her RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id.*

## III. ADMINISTRATIVE FINDINGS

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Plaintiff was disabled from April 20, 2020, through the date last insured of June 30, 2021. R.pp. 62–77. The ALJ found, in pertinent part:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2021.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 20, 2020, through her date last insured of June 30, 2021 (20 CFR 404.1571 *et seq.*). . . .

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine; diabetes mellitus with peripheral neuropathy; seizure disorder; bipolar disorder; borderline personality disorder; attention deficit-hyperactivity disorder (ADHD); post-traumatic stress disorder (PTSD); substance use disorder; and anxiety disorder (20 CFR 404.1520(c)). . . .

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). She could perform lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently. She could perform sitting for 6 hours in an eight-hour workday as well as standing and/or walking for up to 6 hours in an eight-hour workday. The individual could climb ramps and stairs as well as climb ladders, ropes, or scaffolds frequently; balance, as defined in the Selected Characteristics of Occupations (SCO), frequently; and stoop, kneel, crouch, and crawl frequently. The claimant could have no more than occasional exposure to workplace hazards, such as moving mechanical parts or unprotected heights. The individual could understand, remember, and carry out simple instructions and use judgement to make simple, work-related decisions; could perform these activities in two-hour intervals over the course of an eight-hour workday. The claimant could have frequent contact with supervisors and coworkers but could not have contact with the public. The claimant could deal with no more than occasional changes in a routine work setting and no work at a production rate or pace. . . .

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). . . .

7. The claimant was . . . 40 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). . . .
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 20, 2020, the alleged onset date, through June 30, 2021, the date last insured (20 CFR 404.1520(g)).

R.pp. 64–76.

## IV. DISCUSSION

Plaintiff argues that remand is warranted for the following reasons: (1) the ALJ failed to properly evaluate medical opinions in the record; (2) the ALJ failed to properly consider Plaintiff's physical and mental impairments in assessing the RFC; and (3) the ALJ erred at step five of the sequential evaluation. ECF No. 7 at 1–3.

As an initial matter, Plaintiff's brief, spanning only three pages, references little to no record evidence in support of her assertions of error. *See id.* Moreover, as noted multiple times by the Commissioner, what few record citations Plaintiff does include appear to be incorrect, as the cited page numbers do not correspond with the evidence Plaintiff appears to reference. *See* ECF No. 12 at 10–11 n.3, 16, 18. Although Plaintiff filed a short Response brief, she did not correct her record citations therein; in fact, she does not cite to the record *at all* in the Response brief. *See* ECF No. 13.

As such, Plaintiff has raised the asserted errors in a perfunctory manner. Courts have held that when a plaintiff raises an issue in a perfunctory manner, the issue is deemed waived. *Kellen L. v. Comm'r of Soc. Sec.*, No. 6:25-CV-1070-RMG-KFM, 2025 WL 3898626, at *3 (D.S.C. Dec. 19, 2025), *report and recommendation adopted sub nom. Leonard v. Bisignano,* No. CV 6:25-1070-RMG, 2026 WL 38030 (D.S.C. Jan. 6, 2026); *see Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (noting that plaintiff's "perfunctory argument" was arguably

abandoned (citing *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that simply stating an issue exists, without further argument or discussion, constitutes abandonment of that issue)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (finding that issues raised in a perfunctory manner "without elaboration or legal argument" "unaccompanied by some effort at developed argumentation" are deemed waived (internal citations and quotation marks omitted)); *Parms v. Colvin*, C/A No. 1:13-cv-01002, 2015 WL 1143209, at *8 n.10 (M.D.N.C. Mar. 13, 2015) (noting that the "Court need not address . . . perfunctory arguments by counsel"); *see also Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (a party waives an argument "by failing to develop its argument—even if its brief takes a passing shot at the issue") (cleaned up).

"Indeed, the court is not required to rummage through the administrative record to construct and present a well-supported position for the plaintiff." *Kellen L.*, 2025 WL 3898626, at *3; *see Hensley on behalf of N. Carolina v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (explaining that it is not a court's job "to wade through the record and make arguments for either party," and a "party must actually develop its argument") (cleaned up); *Hayes v. Self-Help Credit Union*, C/A No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) ("It is not the role or the responsibility of the Court to undertake the legal research needed to support or rebut a perfunctory argument." (citations omitted)).

Nevertheless, despite the perfunctory nature of Plaintiff's arguments, the undersigned will address the ALJ's evaluation of the medical opinions, the RFC assessment, and the step five analysis. Upon review, the undersigned finds that remand is not warranted.

### A. RFC Assessment

Plaintiff contends that the ALJ erred in assessing her RFC because the ALJ "mischaracterized" her seizure disorder, failed to properly evaluate her mental and physical impairments, "overlooked" her diabetes-related limitations, and failed to assess the combined effects of her impairments. As explained below, Plaintiff has not shown reversible error.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR")[3] 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). A claimant's RFC, which represents "the most [he] can still do despite [his] limitations," must be based on all the relevant evidence in the case record and should account for all of the claimant's medically determinable impairments, including those that are not severe. *Id.*; 20 C.F.R. § 404.1545(a).

In evaluating an RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect his ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "'Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work' of which he believes the claimant to be capable." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Monroe*, 826 F.3d at 179).

---

[3] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating Social Security cases. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

The RFC assessment must include a narrative discussion describing how all the relevant evidence supports each conclusion and must cite "specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7. "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

In assessing the RFC, the ALJ must explain how any material inconsistencies or ambiguities in the record were resolved, SSR 96-8p, 1996 WL 374184 at *7, and he must "build an accurate and logical bridge from the evidence to his conclusions," *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Consequently, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The ALJ's logical explanation is just as important as the ALJ's discussion of evidence and his conclusion. *Id*.

Thus, a reviewing court is to consider both "whether the ALJ examined all relevant evidence" and whether the ALJ "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023)). "The reason for this requirement, as in other administrative-law contexts, is that appellate *re*view is possible only when someone has first articulated a *view*." *Drumgold*, 144 F.4th at 605 (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017)). Missing analysis "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's

findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

"[R]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citations and internal quotation marks omitted).

Here, the ALJ determined that, though the date last insured of June 30, 2021, Plaintiff had the RFC to perform a range of light work as follows:

> She could perform lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently. She could perform sitting for 6 hours in an eight-hour workday as well as standing and/or walking for up to 6 hours in an eight-hour workday. The individual could climb ramps and stairs as well as climb ladders, ropes, or scaffolds frequently; balance, as defined in the Selected Characteristics of Occupations (SCO), frequently; and stoop, kneel, crouch, and crawl frequently. The claimant could have no more than occasional exposure to workplace hazards, such as moving mechanical parts or unprotected heights. The individual could understand, remember, and carry out simple instructions and use judgement to make simple, work-related decisions; could perform these activities in two-hour intervals over the course of an eight-hour workday. The claimant could have frequent contact with supervisors and coworkers but could not have contact with the public. The claimant could deal with no more than occasional changes in a routine work setting and no work at a production rate or pace.

R.pp. 67–68.

**1. Plaintiff's Seizures**

Plaintiff contends that the ALJ "minimized Plaintiff's seizures as 'infrequent' or 'substance-related,' despite neurology notes, seizure diaries, and hospital records showing recurrent seizures while compliant with medication and abstinent" and that the ALJ allegedly substituted "personal judgment for medical evidence." ECF No. 7 at 2 (citing R.pp. 312–20, 368–74). It is not clear upon what evidence Plaintiff relies, as the records she cited do not relate to seizures or otherwise support Plaintiff's argument.

In assessing the RFC, the ALJ considered the effect of Plaintiff's seizures on her ability to work, explaining as follows:

> [T]here is medical evidence that suggests that some of the seizure activity might relate to substance abuse. In any event, regardless of the cause of the potential seizure activity, there is little if any evidence to suggest that any seizures were occurring at a frequency or severity to cause an inability to work in accordance with the residual functional capacity cited above.

R.pp. 71–72.

Contrary to Plaintiff's argument, the undersigned finds that substantial evidence supports this assessment and that the ALJ did not mischaracterize her seizures. Indeed, the ALJ discussed medical records related to seizures, noting that treatment notes from Plaintiff's first visit with Frampton Henderson, M.D., on May 6, 2021, "refer to an episode of a 'seizure while on heroin.'" R.pp. 69–70; *see* R.p. 480 (noting, "She had a seizure 1 month ago" and "Seizure x1 while on heroin"). Dr. Henderson's June 2021 treatment record notes that Plaintiff "denies any recurrence of seizures and says she is not used [sic] any illicit drugs since use that led to having seizures." R.p. 478. The ALJ also summarized Dr. Henderson's treatment notes from Plaintiff's July 2021 appointment, noting that Plaintiff "said she had a seizure yesterday (5F/2). She fell on the floor, but it was not a grand mal episode. Past medical history includes heroin addiction and a seizure while on heroin." R.p. 70; *see* R.p. 477. Dr. Henderson's October 2021 treatment record notes as follows: "She says that she had a seizure about a week ago. . . . She says she has now gone 6 months without using any heroin." R.p. 476. Thus, it appears that it was Dr. Henderson who first considered that the seizures might relate to substance abuse.

The ALJ also considered evidence of seizures from over a year *after* the date last insured, noting that Plaintiff reported seizure activity in July 2022 but that an MRI of the brain revealed no intracranial abnormality. R.p. 70; *see* R.pp. 500–01, 555–68. The ALJ also considered evidence of a seizure in December 2022, eighteen months after the date last insured, summarizing the treatment

notes as follows:

> On December 5, 2022, the claimant presented to Prisma Health for possible seizure (11F/2-13). She said she had seizures as a child, but they went away. She has had diabetes since 2015 and was taking metformin. She had some seizures in 2013, but then they went away as well. She could not describe the seizure-like episodes, but she said they are not generalized shaking events. She just falls down, but she does not shake. She can hear and understand people, but she cannot talk. She took Lamictal in 2013, but she had stopped taking it by 2016. She stopped taking it when she went to prison. EEG studies in 2013 and 2014 were normal. An EEG in August 2022 was normal (9F/5). She has taken Topamax for anxiety and depression, and she said it helps with the seizure activity. She takes gabapentin for lower back pain.
>
> On December 5, 2022, upon exam, the claimant weighed 185 pounds with a BMI of 30.79, indicating mild obesity (11F/7). She had no edema in feet. She was alert and oriented with normal speech and language. Recent and remote memory as well as fund of knowledge are intact. Attention and concentration are intact. Cranial nerves were normal. She had 5/5 strength in all upper and lower bilateral extremities, proximally and distally. Sensation was intact. Coordination and fine motor movements were normal without ataxia or dysmetria. No tremor or abnormal movements. Normal gait and station. An EEG in August 2022 was normal (11F/10). **The progress notes stated, "not sure whether or not she has seizures" (11F/11). She had a seizure diary, and she noted seizure-like activity in June 2021, November 2021, March 2022 (when her son died in a house fire), May 2022, and August 15, 2022. She had been on Lamictal since then. She averages about two seizures per year. She reported that she feels the seizures are stress related.**

R.p. 71 (emphasis added); *see* R.pp. 530–39. On this record, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff's seizures did not occur at a frequency or severity to cause an inability to work in accordance with the assessed RFC. *See* R.pp. 71–72.

**2. Plaintiff's Diabetes**

Plaintiff further contends that the ALJ overlooked Plaintiff's diabetes-related limitations and argues that Plaintiff "suffers from uncontrolled diabetes despite insulin treatment." ECF No. 7 at 3. In support of this argument, Plaintiff states she was "hospitalized in March 2024 with glucose readings over 700 (Tr. 530-536)." ECF No. 7 at 3. Significantly, Plaintiff's citations relate to an office visit from December 2022—not March 2024—which references only one glucose reading of 100 from April 2022. R.p. 536. In April 2023, her glucose reading was 134. R.p. 41.

Only in March 2024, nearly three years after her date last insured, did Plaintiff visit the emergency room with a glucose reading of 743. R.pp. 48–50. The undersigned agrees with the Commissioner that the record does not support Plaintiff's contention that her diabetes was uncontrolled during the relevant timeframe (April 20, 2020, through June 30, 2021). *See* ECF No. 12 at 16.

**3. Consideration of Plaintiff's Impairments**

Plaintiff also generically challenges the ALJ's consideration of her mental and physical impairments as well as the combined effects of all her impairments. ECF No. 7 at 2–3. The undersigned finds that these undeveloped arguments lack merit.

The severity of mental impairments is determined by utilizing the special technique, set forth in 20 C.F.R. § 404.1520a, where the ALJ assesses the degree of functional limitation experienced by the claimant in four broad functional areas, the "paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). These functional areas are assessed as none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If a claimant's functional limitations are rated as "none" or "mild," the ALJ will generally conclude that the claimant's impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). At the hearing level, the ALJ, not a physician, is responsible for determining the severity of Plaintiff's mental impairments by using the special technique. 20 C.F.R. § 404.1520a(e)(4).

The ALJ found that Plaintiff had the following severe mental health impairments: bipolar disorder, borderline personality disorder, ADHD, PTSD, substance use disorder, and anxiety disorder. R.p. 65. Using the special technique, the ALJ found that Plaintiff had no more than moderate limitations in any of the four broad areas of mental functioning based on the whole

record. R.pp. 66–67. The ALJ supported these conclusions with citations to substantial evidence, including treatment notes in which Plaintiff was alert and oriented; had intact recent and remote memory as well as attention and concentration; normal social parameters when engaging with providers; was taking online colleges courses; was working as a caregiver for an older individual for 30 to 35 hours per week during the relevant time period;[4] and had unremarkable mental status evaluations. R.pp. 66–67, 74, 83–127, 425–75, 476–88, 529–72. The prior administrative medical findings were also consistent with these conclusions. R.pp. 128–36, 138–48. The State agency psychologists concluded that Plaintiff had moderate limitations in the four areas and concluded that she could understand, remember, and carry out simple tasks and problems, her concentration is sufficient for simple tasks and problems, and she could perform simple, routine tasks away from the public. *Id.* The ALJ found these opinions persuasive. R.pp. 73–74.

Finally, the ALJ accounted for Plaintiff's moderate limitations in the RFC by assessing the following limitations:

> The claimant could have no more than occasional exposure to workplace hazards, such as moving mechanical parts or unprotected heights. The individual could understand, remember, and carry out simple instructions and use judgement to make simple, work-related decisions; could perform these activities in two-hour intervals over the course of an eight-hour workday. The claimant could have frequent contact with supervisors and coworkers but could not have contact with the public. The claimant could deal with no more than occasional changes in a routine work setting and no work at a production rate or pace.

R.p. 68.

As for physical impairments, Plaintiff makes the following argument:

> MRI and orthopedic records confirm lumbar radiculopathy, nerve impingement, and bilateral foot numbness (Tr. 410–418). Plaintiff was advised to use a cane and avoid driving due to balance and neurological deficits (Tr. 421–425). The ALJ

[4] At the October 2023 hearing, Plaintiff testified that throughout 2020 and 2021, she worked 30 to 35 hours per week taking care of an elderly woman who could not walk. Among other things, Plaintiff would help the woman get from the bed to the chair and bathe her. Plaintiff testified that she spent about 40 percent of the job time walking and 60 percent sitting. R.pp. 94–98, 107–08.

> discounted this evidence, instead crediting state agency consultants who opined Plaintiff could perform medium work (Tr. 24–25). This is not substantial evidence where diagnostic imaging and treating sources confirm more severe restrictions.

ECF No. 7 at 2. Once again, Plaintiff's citations do not align with her assertions. Regarding cane use, the record contains the following with respect to cane usage over three years *after* Plaintiff's date last inured, in 2024: "Since she is having this [decreased] sensation to her feet, I did tell her she should avoid driving a motor vehicle until this resolves. Patient was told to use a cane to ambulate if needed." R.p. 34. Otherwise, Plaintiff merely cites diagnoses and mischaracterizes the ALJ's consideration of the state agency physician opinions. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (explaining that a diagnosis alone does not establish disability and "there must be a showing of related functional loss").

At step two, the ALJ found that Plaintiff had the following severe physical impairments: degenerative disc disease of the lumbar spine, diabetes mellitus with peripheral neuropathy, and seizure disorder. R.p. 65. In assessing the RFC, the ALJ considered evidence of these impairments, including medications, lumbar spine x-rays, brain MRIs, and exam notations showing tenderness in paravertebral lumbar muscles but also 5/5 strength in upper and lower bilateral extremities, intact sensation, normal coordination and gait. R.pp. 69–71. The ALJ also noted that although there was evidence of edema after the date last insured, Plaintiff "had no edema noted at office visits during much of 2020 and 2021." R.p. 71. Notably, the ALJ explained that she was not fully persuaded by the State agency consultants who determined that Plaintiff was capable of a range of exertional-level medium work; instead, in reliance on the entire record, the ALJ limited Plaintiff to a reduced range of light work. R.pp. 67–68, 135.

Plaintiff argues that "the combined effects of Plaintiff's seizures, chronic pain, diabetes, and psychiatric illness clearly preclude sustained work activity." ECF No. 7 at 3. However, contrary to Plaintiff's argument, the ALJ's decision makes clear that she reached her conclusions

by considering the longitudinal record, including evidence relevant to Plaintiff's seizures, diabetes, pain, and mental health impairments, and the combined effects of her impairments on her ability to work. R.pp. 64–77. The ALJ's findings are supported by substantial evidence, and Plaintiff has not shown reversible error. *See* ECF No. 7.

Ultimately, Plaintiff merely disagrees with the ALJ's interpretation of the evidence, which is not a basis that warrants remand. *See Hancock*, 667 F.3d at 472 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." (alteration in original) (citation and internal quotation marks omitted)). The undersigned is able to follow the ALJ's reasoning and substantial evidence supports his RFC conclusions. *See Monroe*, 826 F.3d at 189 (noting in conducting an RFC analysis, an ALJ must identify both the evidence that backs his conclusion, and "build an accurate and logical bridge from [that] evidence to his conclusions." (citation omitted)). Consequently, Plaintiff has not shown remand is warranted on this basis. *See Brown*, 873 F.3d at 267 (noting, to warrant remand, a claimant must either show the ALJ has incorrectly applied a legal standard or show the ALJ's factual findings are not supported by substantial evidence).

**B. Medical Source Opinions**

Effective March 27, 2017, numerous social security regulations and social security rulings (SSRs) were amended or superseded, making the new regulations applicable to claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017), *corrected by* 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017). Because Plaintiff's claim for benefits was filed after March 27, 2017, the ALJ was required to evaluate the application under 20 C.F.R. § 404.1520c.

Under the new regulations, the ALJ is not to defer to or give any specific weight to medical

opinions based on their source.[5] 20 C.F.R. § 404.1520c(a). Rather, ALJs are instructed to consider and evaluate the persuasiveness of the opinion evidence by considering the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(b), (c). Supportability and consistency are the most important factors to consider, and an ALJ must explain how these factors are considered in the determination or decision. *See* 20 C.F.R. § 404.1520c(a), (b)(2). "Supportability roughly means the amount of objective medical evidence supporting the medical opinion, and consistency roughly means how well the medical opinion lines up with other material in the record." *Drumgold*, 144 F.4th at 606. The ALJ may, but is not required to, explain how the other factors are considered.[6] 20 C.F.R. § 404.1520c(b)(2), (c).

In evaluating the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s),[7] the more persuasive the medical opinions

[5] This effectively does away with the so called "Treating Physician Rule" under the provisions of 20 C.F.R. § 404.1527(c)(2), whereby an ALJ was directed to give controlling weight to the opinion of a treating physician if it was well supported by medically-acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence of record. In addition, 20 C.F.R. § 404.1527(c)(5) provided that ALJ's should "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a medical source who is not a specialist."

[6] This represents another significant departure from the requirements of 20 C.F.R. § 404.1527(c), whereby, if the ALJ declined to accord controlling weight to the treating physician's opinion, he was to weigh the medical opinions of record based on all of the following factors: (1) examining relationship; (2) treating relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that tended to support or contradict the opinion.

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The new regulations also define a "prior administrative medical finding" as a "finding, other than the

or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Supportability" denotes "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *Revisions to Rules*, 82 Fed. Reg. 5844-01, 5853; *see also* 20 C.F.R. § 404.1520c(c)(1).

As for the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In other words, "consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules*, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(2). Although these amended regulations do away with the idea of assigning "weight" to medical opinions, the ALJ's reasons for finding the opinion of a medical source unpersuasive still must be supported by substantial evidence.

Plaintiff argues that the ALJ did not properly consider the opinions of Plaintiff's treating physicians, Dr. Frampton Henderson and Dr. Emily Melsom, in accordance with the applicable regulatory standard. ECF No. 7 at 1–2. Upon review, the undersigned finds that the ALJ properly performed her obligations under the correct regulatory framework and provided adequate explanation of her findings to allow for meaningful review.

First, the ALJ accurately summarized Dr. Henderson's medical opinions from June 2021 and October 2021:

> Dr. Frampton Henderson, MD submitted a medical opinion in June 2021 (2F). This medical source noted the claimant has several impairments, including tingling and numbness in both feet, lower back pain with stiffness and radiating pain into leg,

---

ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the Social Security Administration's] Federal and State agency medical and psychological consultants at a prior level of review[.]" 20 C.F.R. § 404.1513(a)(5).

and psychiatric illnesses. This source opined the claimant would miss 5 or more days of work each month, due to her medical condition. She could never sit, stand, walk, stoop, or climb. This medical source added, "[The claimant] says after two hours of sitting, she has to get up and move". She could lift and carry 5 pounds occasionally and 10 pounds infrequently, never lifting 11 or more pounds. She could frequently use hands for fine and gross manipulation; could infrequently lift both arms over the shoulder level. She suffers moderately severe pain. She would need to elevate legs two to three times per day for 30 minutes each time. She would be off task 60% of the workday. She does not need an assistive device to ambulate.

Continuing with the medical opinion from Dr. Henderson, MD in June 2021, this source further opined the claimant would be frequently precluded from understanding and remembering detailed instructions; performing activities in a schedule; maintain regular attendance; sustaining ordinary routine; working in coordination with others without distraction; and maintaining attention and concentration for extended periods (2F). She would be occasionally precluded from adapting to ordinary stress or changes in the workplace. She has "no" limitation regarding interacting appropriately with the general public, asking simple questions, accepting instructions, or getting along with co-workers and peers. She has some unspecified limitation regarding maintaining socially appropriate behavior. She would need unscheduled break periods during an 8-hour workday beyond the normal breaks normally allowed.

Dr. Frampton Henderson, MD submitted another medical opinion in October 2021 (6F). At this time, this source noted the claimant's impairments were psychiatric problems, seizure disorder, chronic back pain, leg pain, and numb feet. In this opinion, this doctor opined the claimant would miss 5 or more days of work each month, due to her medical condition. She could frequently lift 5 pounds and infrequently lift up to 20 pounds. She could occasionally carry up to 20 pounds. She could never lift or carry more than 20 pounds. She could sit up to 2 hours in an 8-hour workday. She could stand one hour in an 8-hour workday. She could walk 1 hours in an 8-hour workday. She could occasionally reach overhead, reach in all other directions, handle, push, and pull with bilateral upper extremities. She could frequently handle, finger, and feel with bilateral upper extremities. She could never operate foot controls. She could occasionally climb stairs and ramps, but she could never ladders or scaffolds. She could never balance, stoop, kneel, crouch, or crawl.

Continuing with the medical opinion from Dr. Henderson, MD in October 2021, this doctor further opined the claimant would be frequently precluded from understanding and remembering detailed instructions; performing activities in a schedule; maintain regular attendance; sustaining ordinary routine; working in coordination with others without distraction; and maintaining attention and concentration for extended periods (6F). She would be occasionally precluded from adapting to ordinary stress or changes in the workplace. She has "no" limitation regarding interacting appropriately with the general public, asking simple questions, accepting instructions, or getting along with co-workers and peers. She has some unspecified limitation regarding maintaining socially appropriate

> behavior. She suffers moderately severe pain. She would need to elevate legs two to three times per day for 30 minutes each time. She would be off task 60% of the workday. She does not need an assistive device to ambulate. She would need unscheduled break periods during an 8-hour workday beyond the normal breaks normally allowed.

R.pp. 72–73; *see* R.pp. 375– 77, 490–94.

The ALJ then explained her finding that the "two opinions from Dr. Henderson, MD in 2021 (Exhibits 2F and 6F) are not persuasive for several reasons." R.p. 73. As to the supportability factor, the ALJ explained as follows:

> First, this doctor seems to have relied too heavily on the claimant's own subjective statements. For instance, at one point, the doctor noted that the claimant has stated that, "after two hours of sitting, she has to get up and move", but the doctor seemed to take this as fact without referencing any specific objective medical evidence to support this assertion (2F). Additionally, this statement by the claimant is in direct contrast with the June 2021 opinion (2F) that states the claimant can do "no sitting" at all. . . . Furthermore, the two medical opinions from Dr. Henderson in 2021 (Exhibits 2F and 6F) are not consistent with his treatment records from Providence Family Practice, discussed above[,] which reflect much more benign exams than these opinions suggest.

R.p. 73. Earlier in the decision, the ALJ had discussed Dr. Henderson's treatment records from Providence Family Practice, noting that Plaintiff established treatment with Dr. Henderson in May 2021, just one month before he gave his first medical opinion in June 2021:

> On May 6, 2021, the claimant told her provider at Providence Family that she has a heroin addiction (5F/5). She had been using heroin for 4 months. She recently entered into a suboxone treatment program. It appears she recently took heroin and suboxone at or near the same time and went into respiratory arrest, requiring emergency medical treatment. Treatment notes refer to an episode of a "seizure while on heroin". The claimant said she did not know that she should not take suboxone if she had recently used heroin. Upon exam, the claimant was alert and oriented, and affect was normal. She had some tenderness in paravertebral lumbar muscles, yet her gait was unremarkable.
>
> On June 18, 2021, at Providence Family, treatment notes stated the claimant wanted the provider to fill out some forms to help her get disability (5F/3). This was the claimant's second office visit. She reported neuropathy in feet from diabetes. She had decreased feeling in feet, but her gait was unremarkable. She was weaning off suboxone.

> On July 13, 2021, at Providence Family, the claimant said she had a seizure yesterday (5F/2). She fell on the floor, but it was not a grand mal episode. Past medical history includes heroin addiction and a seizure while on heroin. Her A1C was 5.2% in May 2021 (12F/2), and this is below even the diagnostic criteria for pre-diabetes. . . .
>
> On October 28, 2021, at Providence Family Practice, the claimant stated she has gone six months without using heroin (5F).

*See* R.pp. 69–70.

Plaintiff, without citing any evidence, contends that that the ALJ did not meaningfully address Dr. Henderson's clinical findings of neuropathy, decreased sensation, lumbar pain, and radiculopathy; his documentation of seizure activity over time; or his repeated observations of functional deterioration. ECF No. 13 at 3. But the above discussion shows that the ALJ did consider Dr. Henderson's clinical findings. Upon review of Dr. Hendersons' two medical opinions and treatment records, the undersigned finds that substantial evidence supports the ALJ's analysis of the supportability factor and her conclusion that Dr. Henderson's treatment records "reflect much more benign exams than [his] opinions suggest." R.p. 73; *see* R.pp. 476–80; *see Drumgold*, 144 F.4th at 606 ("Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation." (citation omitted)).

As to the consistency factor, the ALJ explained as follows:

> The excessive limitations of "no" sitting, standing, or walking in the June 2021 opinion (2F) are too extreme in light of the overall evidence, including testimony from the claimant regarding her current engagement in online classes and work activity around the time of these assessments, and these extreme limitations erode the persuasiveness of the entire medical opinion. Furthermore, the two medical opinions from Dr. Henderson in 2021 (Exhibits 2F and 6F) . . . are not consistent with the objective spine imaging, discussed above. For the most part, the claimant's impairment-related symptoms were largely under control with medications prior to the date last insured. The opinion from October 2021 (6F) is somewhat persuasive insofar as it supports the conclusion that the claimant is able to lift and carry 20 pounds occasionally—this conclusion has evidentiary support in the overall medical and other evidence, and it is consistent with the record as a whole.

R.p. 73. Although Plaintiff complains that the ALJ cherry-picked evidence when assessing

consistency, she does not provide any examples or citations to support this argument. ECF No. 13 at 3. Moreover, the ALJ's earlier discussion of the record evidence supports her consistency analysis. *See* R.pp. 69–71 (discussing, among other things, objective spine imaging, medication, Plaintiff's reports that she worked 30 to 35 hours weekly in 2021 and 25 hours a week in 2022, treatment records from June 2020 through December 2022); *see also* R.p. 482.

Contrary to Plaintiff's conclusory arguments, the ALJ properly and adequately addressed both the supportability and consistency factors in her discussion of Dr. Henderson's opinions, and substantial evidence supports her findings.

The ALJ also considered the August 2023 medical opinion of Emily Melson, M.D.:

> Dr. Emily Melsom, MD submitted a medical opinion in August 2023 (15F). This source opined the claimant has moderate limitation in ability to follow one or two-step oral instructions and recognize a mistake and correct it as well as identify and solve problems, sequence multi-step activities, and use reason and judgment to make work-related decisions. She has moderate limitation in ability to initiate and perform a task that she knows how to do and moderate limitation to work at an appropriate and consistent pace, completing tasks in a timely manner. She has extreme limitation in ability to ignore or avoid distractions while working. She has marked limitation in ability to work close to or with others without interrupting or distracting them and ability to sustain an ordinary routine and regular attendance at work. She has extreme limitation in ability to work a full day without needing more than the allotted number or length of rest periods during the day. This source added that the claimant "cannot work on feet for more than an hour" (15F/2).
>
> Continuing with the opinion from Dr. Melsom, MD in August 2023 (Exhibit 15F), this source further opined the claimant has moderate limitation in ability to adapt to changes, manage psychologically based symptoms, distinguish between acceptable and unacceptable work performance, set realistic goals, and make plans independently. She has extreme limitation in ability to be aware of normal hazards and take appropriate precautions. She has marked limitation in ability to cooperate with others or ask for help when needed. She has mild limitation in ability to handle conflicts with others and ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. She has moderate limitation in ability to understand and respond to social cues and ability to respond to requests, suggestions, criticism, correction, and challenges. This source did not believe that alcohol or substance use had any impact in arriving at this assessment. This source opined the claimant could manage benefits in her own best interest.

R.p. 74; *see* R.pp. 590–92.

The ALJ then explained why she found Dr. Melsom's opinion unpersuasive. As to the supportability factor, the ALJ explained as follows: "First and foremost, this opinion issued over two years after the date last insured in this case and therefore is too remote to be significantly informative of the claimant's limitations at the relevant period." R.p. 74. Substantial evidence supports this finding, as the treatment records indicate that Plaintiff did not establish treatment with Dr. Melsom until April 10, 2023, almost two years after the date last insured of June 30, 2021. R.p. 574; *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

As to the consistency factor, the ALJ explained as follows:

> Moreover, this opinion does not have support in the mostly normal signs and findings at most mental status evaluations in the medical records, discussed above. Additionally, this opinion is not consistent with the other evidence, such as the significant work activity in 2021 and 2022 and ongoing college coursework at the time of the opinion itself. This opinion is somewhat persuasive insofar as it supports moderate mental restrictions because this has support in the medical evidence, and it is consistent with the other evidence.

R.pp. 74–75. Contrary to Plaintiff's argument, *see* ECF No. 13 at 4, the ALJ considered whether Dr. Melsom's opinion was consistent with mental health evidence from prior to the date last insured and concluded that the opinion was inconsistent with the "mostly normal signs and findings at most mental status evaluations in the medical records." R.p. 74. Substantial evidence supports these findings. *See* R.pp. 69–70 (discussing mental health records from prior to and after the date last insured), 74–75, 94–97, 436–42 (December 2020: Plaintiff was attending school online for a bachelor's degree and her recent memory, remote memory, attention and immediate recall, and concentration were all intact), 448, 452, 463.

Because Plaintiff's disability application presented conflicting evidence, the ALJ needed to resolve the conflicts in the evidence, which she did by properly applying 20 C.F.R. § 404.1520c and explaining why she was not persuaded by Dr. Henderson and Dr. Melsom's opinions. *See Drumgold*, 144 F.4th at 608. The undersigned does not have difficulty following the ALJ's reasoning as to her consideration of the supportability and consistency factors. To the extent Plaintiff argues that other evidence in the record supports her position, this Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence, as it is the ALJ's duty to weigh evidence and resolve evidentiary conflicts. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." (citation omitted)); *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence. . . The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). Plaintiff merely presents a disagreement with the ALJ's findings and fails to show reversible error. Consequently, the undersigned finds that the ALJ's persuasiveness evaluation of Dr. Henderson and Dr. Melsom's opinions was proper and that remand is not warranted on this basis. *See Drumgold*, 144 F.4th at 605 ("When the ALJ [resolves conflicting medical evidence] by applying the correct factors, [the court] won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake.").

**C. Step Five**

In her final contention of error, Plaintiff argues as follows: "Because the [vocational expert's] testimony establishes that crediting Plaintiff's treating physician's restrictions leads to a finding of disability, remand or reversal is required." ECF No. 7 at 3. The undersigned disagrees.

An ALJ may utilize a vocational expert at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a vocational expert's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record as found by the ALJ. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (finding that the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record). While an ALJ can use a vocational expert to assist in determining whether there is available work that a claimant can perform, an ALJ is "not obligated to accept or rely on all of the [vocational expert's] responses." *Cumbee v. Kijakazi*, No. CV 5:20-3826-KDW, 2022 WL 1591055, at *10 (D.S.C. May 19, 2022).

As Plaintiff acknowledges, the Vocational Expert testified that there are jobs that existed in significant numbers in the national economy that can be performed by a hypothetical person with Plaintiff's RFC. *See* ECF No. 7 at 3; R.pp. 123–24. When certain additional limitations were added to the RFC for the hypothetical person, the Vocational Expert testified that those additional limitations would preclude work. R.pp. 125–26.

Plaintiff's final argument—that if the ALJ properly credited what she believes were the extent of her impairments, then the step five analysis would have changed—is contingent on her prior arguments addressed above. However, as discussed above, the ALJ's consideration of the

medical source opinions and the RFC assessment are supported by substantial evidence, and thus the ALJ's reliance on the vocational expert testimony at step five was proper. *See Biestek*, 587 U.S. at 105 (explaining that vocational expert testimony is "the kind of evidence—far more than a mere scintilla—that a reasonable mind might accept as adequate to support a finding about job availability") (internal quotation marks and citation omitted); *Dubose v. Kijakazi*, No. 4:21-CV-03688-TER, 2023 WL 1960997, at *10 (D.S.C. Feb. 13, 2023) (rejecting "Plaintiff's argument regarding hypotheticals to the VE" because it was "essentially a regurgitation of the prior arguments addressed above where Plaintiff asserts the RFC ought to include all of Plaintiff's allegations and asserts the VE should be asked about such RFC"). Accordingly, Plaintiff has not shown remand is warranted on this basis.

## V. CONCLUSION

It is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

The parties are referred to the Notice Page attached hereto.

Molly H. Cherry
United States Magistrate Judge

July 29, 2026
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).